**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**C & C BOAT WORKS, L.L.C.**                    CIVIL ACTION

**versus**                                        No. 08-3875

**SKANSI MARINE, L.L.C.**                       SECTION: "I"/1

<u>**ORDER AND REASONS**</u>

Before the Court is a motion to compel arbitration filed by defendant, Skansi Marine, L.L.C. ("Skansi").[1] In connection with the motion, Skansi asserts that plaintiff, C&C Boat Works, L.L.C. ("C&C"), lacks standing to pursue its complaint for declaratory relief which requests a finding by this Court that Skansi does not have a valid maritime lien.[2] In a conference held in chambers, the parties agreed to arbitrate claims pending before this Court in the event that the Court finds that C&C has standing to seek a declaratory judgment.[3] For the following reasons, the Court concludes that C&C has standing. Accordingly, **IT IS ORDERED** that the parties proceed to arbitration as agreed at the status conference, the motion to compel arbitration is **DISMISSED AS MOOT**, the pending motions are **DISMISSED WITHOUT PREJUDICE,** and this case is **STAYED** and **ADMINISTRATIVELY CLOSED**.

---

[1] Rec. Doc. No. 21.

[2] Rec. Doc. No. 21-2, p. 10.

[3] Rec. Doc. No. 52.

1

## BACKGROUND

On November 10, 2005, C&C and Skansi entered into a contract for C&C to construct a vessel, the M/V Isla Blanca, for Skansi in accordance with Skansi's plans and specifications.[4] The contract further provided C&C with the right to use the plans to construct vessels for other buyers on the condition that C&C pay $20,000 to Skansi for each vessel built according to Skansi's plans.[5]

Following a dispute between the parties, the contract was terminated and C&C contracted to sell the vessel to Adriatic Marine, L.L.C. ("Adriatic"). On April 24, 2007 Adriatic filed a lawsuit in state court against C&C and Skansi, seeking a declaratory judgment with respect to Adriatic's right to purchase the vessel from C&C and to obtain the vessel "free and clear of any liens or encumbrances."[6] Within the state court action, C&C filed claims against Skansi for, among other things, the right to use Skansi's plans, while Skansi filed claims against C&C, including a claim for conversion.

On May 20, 2008, Skansi filed a "Notice of Claim of Lien" for $500,000 against the M/V Isla Blanca with the National Vessel Documentation Center.[7] On June 26, 2008 C&C deposited $1 million

---

[4] Rec. Doc. No. 27-2.

[5] *Id.*

[6] Rec. Doc. No. 53-3.

[7] Rec. Doc. No. 1, para. VII; Rec. Doc. No. 54-2.

into the state court registry as security for any judgment Skansi may obtain against C&C.[8] Pursuant to a consent judgment signed on July 8, 2008, C&C agreed that the money would remain in the registry of the court pending final judgment and Skansi agreed to execute a "Satisfaction of Lien" with respect to any claim against the M/V Isla Blanca.[9]

On July 7, 2008, C&C filed a complaint in this Court, seeking a declaratory judgment that Skansi does not have a valid maritime lien and that C&C be permitted to sell the vessel "free and clear of the Skansi 'claim.'"[10] C&C's complaint alleges that Skansi's claim "created a cloud on the title of the M/V Isla Blanca with the threat of seizure, effectively preventing the sale of the vessel, which is causing unnecessary, detrimental and irreparable harm to C&C."[11] Skansi filed a counterclaim on August 26, 2008, seeking a declaratory judgment that the matter was subject to arbitration pursuant to the vessel construction contract.[12]

At a January 23, 2009 status conference, counsel for Skansi advised the Court that Skansi takes the position that C&C had no standing to pursue the lien issue in light of the sale of the

---

[8] Rec. Doc. No. 11.

[9] *Id.*

[10] Rec. Doc. No. 1, para. XXIII.

[11] Rec. Doc. No. 1, para. XIV.

[12] Rec. Doc. No. 20, paras. VI, XVIII.

3

vessel to Adriatic. Both parties agreed that arbitration of the claims <u>pending before this Court</u> was agreeable were the Court to find standing.

## **LAW AND ANALYSIS**

"[S]tanding is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction." Car*r v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991). A court's inquiry into standing addresses two components, "'both constitutional limitations on a federal-court jurisdiction and prudential limitations on its exercise.'" *ACORN v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). First, a plaintiff must satisfy constitutional standing requirements stemming from the case or controversy requirement of Article III of the United States Constitution. *Id.* Then, a court considers whether a plaintiff has prudential standing, the "'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

Constitutional standing requires that a plaintiff establish "(1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001).

Prudential standing focuses on whether the plaintiff "'is a

4

proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'" *Id.* (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986)). "These judicially created limits concern whether a plaintiff's grievance arguably falls within a zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *Id.* (citing *ACORN*, 178 F.3d at 363). Unlike the constitutional standing requirements, Congress can abrogate or modify prudential standing requirements. *ACORN*, 178 F.3d at 363.

Skansi contends that C&C lacks standing to challenge the validity of the maritime lien because C&C did not own the M/V Isla Blanca when C&C filed its complaint in this Court on July 7, 2008.[13] A maritime lien is a property right in a vessel that arises by operation of law as security for a debt. *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). As a property right, a maritime lien "adheres to the vessel wherever it may go" and

---

[13] C&C asserts that it suffered an injury as result of Skanski's notice of lien in that the lien interfered with C&C's obligation to sell the vessel free and clear of any liens or encumbrances, it was forced to deposit $1 million into the state court registry, and it suffered damages due to the delayed sale of the vessel to Adriatic. C&C also contends that its injury can be redressed by a judgment declaring the lien invalid. Notwithstanding, Skansi's argument appears to focus on prudential, as opposed to constitutional, standing.

"follow[s] the vessel even after it is sold to an innocent purchaser." *Id.* "Thus, the maritime lien is a lien on the vessel, 'and only indirectly, inasmuch as it conflicts with the owner's rights in the vessel, it is connected with the owner.'" *Id.* (quoting *Pierside Terminal Operators, Inc. v. M/V Floridian*, 389 F. Supp. 25, 26 (E.D. Va. 1974)).

C&C contends that at the time it filed its complaint for declaratory judgment on July 7, 2008, it owned the M/V Isla Blanca. C&C supports its contention with a notarized "Act of Sale" which identifies July 15, 2008 as the effective sale date of the M/V Isla Blanca.[14] The act of sale was signed by C&C's manager, two witnesses and a notary on July 15, 2008. C&C also submits the sworn declaration of C&C manager, Anthony Cibilich, stating that C&C did not sell the vessel until July 15, 2008.[15]

In response, Skansi submits several documents from the United States Coast Guard's National Vessel Documentation Center to show that C&C had transferred ownership to Adriatic before C&C filed this lawsuit. Among the documents are a "Certification of Documentation"[16] issued on June 6, 2008 that lists Adriatic as the

---

[14] Rec. Doc. No. 56-2.

[15] Rec. Doc. No. 53-6. In a February 10, 2009 telephone conference, the parties stipulated to the authenticity of the notarized act of sale and the sworn declaration of Anthony Cibilich.

[16] "A Certificate of Documentation is required for the operation of a vessel in certain trades, serves as evidence of vessel nationality, and permits a vessel to be subject to preferred mortgages." 46 C.F.R. § 67.1.

"managing owner" of the Isla Blanca,[17] a June 27, 2008 "Certificate of Ownership of Vessel" that names Adriatic as owner,[18] and a May 30, 2008 letter to the National Vessel Documentation Center from ABS that identifies Adriatic as the vessel's owner.[19] Skansi also directs the Court to a builder's certificate filed by C&C on June 3, 2008,[20] which followed a May 27, 2008 letter from the U.S. Coast Guard advising C&C that a previously-filed certificate showed a completion date of June, 2008 and that a "Builder's Certificate is not acceptable until the vessel has been completed and delivered for its intended use."[21] The letter further advises C&C to submit a new builder's certificate once the vessel has been completed..[22]

Documentation from the U.S. Coast Guard does not definitively prove that C&C no longer owned the vessel at the initiation of this litigation. Neither the builder's certificate nor the certificate of documentation constitutes conclusive evidence of ownership. *See* 46 U.S.C. § 12134(3)("A certificate of documentation is not conclusive evidence of ownership in a proceeding in which ownership

---

[17] Rec. Doc. No. 59-2, p. 3.

[18] *Id.* at p. 8. The National Vessel Documentation Center issues certificates of ownership by request. 46 C.F.R. § 67.303.

[19] *Id.* at p. 9.

[20] *Id.* at p. 14.

[21] *Id.* at p. 12.

[22] *Id.*

7

is in issue."); *ITT Indus. Credit Co. v. M/V Richard C*, 617 F. Supp. 761, 764-65 (E.D. La. 1985) ("A Certificate of Documentation is not conclusive evidence of ownership...Rather, the question of ownership of a vessel is governed by state law...A sale in Louisiana is considered perfect between the parties when there exists consent as to the object and the price."); *Chase Manhattan Fin. Servs., Inc.*, 896 F.2d 452, 460 (10th Cir. 1990)("[T]he builder's certificate is prima facie, but not conclusive, evidence of title because it is part of the paperwork required by the Coast Guard for the certification of documentation process."); *Hozie v. The Vessel Highland Light*, No. 98-55451, 1999 WL 313650, at *1 (9th Cir. 1999)("Underwood did not become the legal owner of the ship when the Coast Guard issued a certificate of documentation....").

In light of the notarized act of sale executed on July 15, 2008, the Court is satisfied that C&C had standing to seek declaratory relief. Any events that occurred after C&C filed its complaint on July 7, 2008 do not negate C&C's standing. *See Carr*, 931 F.2d at 1061.[23]

For the foregoing reasons, the Court finds that C&C has

---

[23] The Court also notes that Adriatic filed a lawsuit against C&C for delivery of the vessel free and clear of liens, suggesting that C&C may be responsible to Adriatic for the release of the lien. Furthermore, after Adriatic filed its complaint and Skansi filed a notice of lien, C&C deposited $1 million into the state court registry. In exchange, Skansi agreed to execute a satisfaction of the lien on July 8, 2008, one day after litigation commenced in this Court.

standing to pursue its complaint against Skansi. Accordingly,

**IT IS ORDERED** that the above-captioned matter proceed to arbitration as agreed at the January 23, 2009 status conference and that the motion to compel arbitration is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the above-captioned case is **STAYED** and **ADMINISTRATIVELY CLOSED** and that the pending motions are **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, February 10th, 2009.

                                      **LANCE M. AFRICK**
                              **UNITED STATES DISTRICT JUDGE**